IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

RODNEY H. YOUNG,

    Plaintiff,

vs.                                                        No. CIV-05-0427 WJ/ACT

GALE A. NORTON, Secretary,
DEPARTMENT OF THE INTERIOR,

    Defendant.

**MEMORANDUM OPINION AND ORDER ON
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

THIS MATTER comes before the Court pursuant to Defendant's Motion for Summary Judgment (Doc. 82). Having reviewed the submissions of the parties and being otherwise fully advised on the law, I conclude that Defendant's motion is well taken and will be granted.

**BACKGROUND**

On April 14, 2005, Plaintiff filed his Complaint in this matter alleging age discrimination and age-related reprisal.[1] On March 8, 2006, by leave of Court, Plaintiff filed an amended Complaint in this matter alleging his age discrimination and reprisal claims under the ADEA and adding claims of discrimination, reprisal and hostile environment under Title VII and the Rehabilitation Act. On June 27, 2006, Defendant filed a motion to dismiss Plaintiff's hostile environment claims and claims related to his removal from federal service for lack of subject matter jurisdiction. On July 13, 2006, Defendant filed the instant motion for summary judgment.

---

[1] Plaintiff's original complaint clearly alleged age discrimination though it did erroneously purport to allege this pursuant to Title VII.

By Memorandum Opinion and Order filed September 1, 2006, this Court granted Defendant's motion to dismiss. Thus, the only claims remaining are those of discrimination and reprisal related to Defendant's attempt to relocate Plaintiff's job to Washington, D.C for which Plaintiff filed an EEO Complaint on November 5, 2003. The Court now addresses Defendants' motion for summary judgment in light of its prior rulings. Defendant's Undisputed Material Facts Numbers 3, 4, 5, 8, 12, 15, 16 and 17 all concern the reasons for Plaintiff's removal from federal service and are not relevant to the remaining claims. Similarly, Plaintiff's responses to these facts and Plaintiff's Statement of Material Facts Numbers 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 27,[2] all but the first sentence of 28, 29, 33, 34, 35, 36, 37, 38, 39, and 40 concern Plaintiff's removal from federal service and are not relevant to the remaining claims. Plaintiff's Statement of Material Facts Numbers 26,[3] 30[4] and 32 concern Plaintiff's allegations of a hostile environment and are not relevant to the remaining claims. Plaintiff's statement of Material Fact Number 31 alleges hostile environment reprisals for Plaintiff's involvement in other persons' EEO Complaints after he filed his November 5, 2003 EEO Complaint and are thus not relevant to the remaining claims. Viewing the remaining facts and evidence in a light most favorable to Plaintiff as the

---

[2]Plaintiff alleges that he conducted a fraud investigation in the late 1990's involving a friend of Parisian, and that his findings of fraud led to the friend's demotion and removal from OIEP. Parisian later brought his friend back to OIEP, and the friend pressed for Plaintiff's removal from federal service.

[3]Plaintiff alleges that Parisian investigated two of Plaintiff's subordinates three times for the same conduct. Because Young had conducted the first investigation and found no wrongdoing, the subsequent two investigations were hostile toward Plaintiff as well as Plaintiff's subordinates.

[4]The facts detailed in Plaintiff's Statement of Fact Number 30 appear to have occurred in January 2003 before Plaintiff filed his EEO Complaint but were not the subject of the Complaint.

Court must in deciding a motion for summary judgment, the pertinent facts may be summarized as follows.

In 1991, Plaintiff was employed by the Department of Interior (DOI), Bureau of Indian Affairs (BIA), in the Office of the Director, Office of Indian Education Programs (OIEP). For the final thirteen years of his employment, Plaintiff was a GS-15.[5] He was an expert in school and tribal issues and was regarded as high-achieving throughout his career. He was sent to federal executive training, given only to selected applicants. In 1991, Plaintiff was a Financial Manager stationed in Albuquerque, New Mexico. Part of his duties as financial manager included directing financial policies and procedures for OIEP that are consistent with the policies and procedures of the DOI, other federal agencies and Congress. Between November 29, 1999 and May 20, 2000, Plaintiff was designated as an Acting Education Line Officer (ELO) for the Fort Apache/Pima office of OIEP. Among his duties as ELO, he ensured the health, safety and welfare of the children in the BIA schools and ensured that the disbursement of federal funds was in accordance with source directives or guidance of the BIA, DOI and other federal agencies.

In May 2001, Plaintiff was detailed to the position of Deputy Director for Policy, Administration and Budget (PAB) within the OIEP. When his detail ended, Plaintiff requested to be reassigned from his position as Financial Manager to the position of Deputy Director for PAB in Albuquerque, New Mexico. The duties and responsibilities of the Deputy Director for PAB included ensuring that all program elements responsible for disbursing federal funds or managing

---

[5]This is an undisputed fact and the Court includes the information as it was presented by the Plaintiff. Plaintiff provides no explanation of "GS-15." However, I believe I may take judicial notice that "GS-15" is a high level federal pay grade.

property adhered to Treasury, GAO, OMB, GSA,[6] Departmental and BIA guidance and directives for financial administration and property management.

In August 2003, Edward Parisian became Director of OIEP and Plaintiff's supervisor. Previously, in 1989, Parisian had been selected as Director of OIEP with no previous government service. He quit in 1992. He was then rehired as an ELO at the Northern Pueblos Agency from 2000 to 2001, but went AWOL. He was permitted to resign instead of being fired for abandoning his post. In 2002, he was rehired as Deputy Director of School Operations. Then Director Mehojah had selected someone else for this position, but Mehojah's supervisor overrode his choice and gave the position to Parisian despite the fact that Mehojah's choice was better qualified and Parisian had never had executive management or SES training.

When Parisian became Director of School Operations in 2002, John Wahnee held the job of Special Assistant to the Director of School Operations. Thus, Parisian became Mr. Wahnee's supervisor. Mr. Wahnee was a very long-term and knowledgeable employee who had served for many years as the ELO at the Hopi agency. However, Mr. Wahnee had an intractable form of Gillian-Barre Syndrome and had been reassigned by Mehojah from Hopi to Albuquerque as an accommodation for his illness so that he could be near his medical specialists. Almost immediately after Parisian became Wahnee's supervisor, he attempted to reassign Wahnee back to Hopi. Mehojah interceded and assigned Wahnee as special assistant to Plaintiff. In January 2003, Plaintiff was detailed to some special assignments and Parisian took over Plaintiff's duties

---

[6]This is an undisputed fact and the Court includes the information as it was presented by the Plaintiff. Plaintiff provides no explanation of "GAO," "OMB" or "GSA." However, I believe I may take judicial notice that these are acronyms for federal agencies with "GAO" is the Government Accountability Office, "OMB" is the Office of Management and Budget and "GSA" is the General Services Administration.

becoming Wahnee's supervisor once again.  Parisian immediately attempted to reassign Wahnee to Turtle Mountain, South Dakota.[7]  Wahnee began informal EEO counseling regarding this attempted reassignment.  Parisian was first made aware of Wahnee's EEO activity on September 10, 2003 when a BIA EEO counselor contacted him about Wahnee's allegations.[8]  He was not made aware at that time of any witnesses or other employees involved or assisting in Wahnee's claim.  Wahnee filed an EEO Complaint on October 3, 2003.

Plaintiff's counsel alleges that Plaintiff assisted Wahnee with his EEO allegations by confirming that Parisian was aware of Wahnee's need for continued accommodation and confirming that Parisian was denying Wahnee a reasonable accommodation based on personal dislike and extreme age bias.  However, Plaintiff provided no evidence that he made these confirmations.[9]

---

[7]Plaintiff states that Mehojah believed that Parisian's attempt to reassign Wahnee was a hostile act.  However, Mehojah's opinion as to Parisian's motives is not relevant.

[8]Plaintiff alleges that Wahnee filed an EEO Complaint in July 2003.  However, Plaintiff provides no evidence in support of this allegation.

[9]Plaintiff provides evidence by way of the deposition testimony of Ed Brewer that Parisian made disparaging comments about Wahnee's age, but this evidence does not support an inference that Plaintiff was aware of the comments, informed Wahnee of the comments or in any way assisted Wahnee's EEO Complaint.  See Plaintiff's Exhibit 15 p. 71.  Plaintiff's Exhibit 16 is listed as testimony before the EEOC, and it is in the form of questions and answers.  On the first page of the exhibit, a person answers a question stating that Parisian made disparaging remarks about Wahnee's age.  However, there is nothing within the four corners of the exhibit that identifies the declarant or indicates that the testimony is sworn.  Accordingly, the Court will not consider the substance of this exhibit.  Even if the Court did consider this exhibit and assumed that the declarant was Plaintiff, this would only indicate that Plaintiff knew about Parisian's feelings toward Wahnee and would not support any inference that Plaintiff assisted Wahnee with the EEO process.

Before Parisian was given the position of Director of OIEP in August 2003, he bragged that, once he became Director, Mehojah and everyone who was with him would be gone. On August 13, 2003, as Director of OIEP, Parisian sent a memorandum to Plaintiff informing him that his position as Deputy Director of PAB was being moved to Washington, D.C. effective September 21, 2003.[10] The letter informed Plaintiff that he had the option of relocating with his position, i.e., moving to Washington, D.C. The letter indicated that Plaintiff must decide whether to exercise this option by August 18, 2003, and failure to respond by close of business on August 18 would be considered a declination of the option. The letter informed Plaintiff that, if he declined to relocate with his position, he was not eligible for optional retirement because "you are age 49 years with 19 years of service." Plaintiff's Exhibit 2a. Also, if Plaintiff declined relocation, he might be separated from his position "under adverse action procedures." Id. Mehojah testified in his deposition that it was unusual to make reference to a person's age in a document such as the relocation letter given to Plaintiff.

On August 18, 2003, Plaintiff accepted the relocation and requested a thirty (30) day extension of time to October 21, 2003 in which to report to Washington, D.C. Parisian denied Plaintiff's request for the extension, but a Human Resources Officer subsequently notified Plaintiff that his report date for Washington, D.C. was being deferred to October 21, 2003.

On November 5, 2003, Plaintiff filed an EEO Complaint alleging that Parisian's decision to relocate his position from Albuquerque, NM to Washington, D.C. was motivated by unlawful

---

[10]Plaintiff alleges that Parisian also sent a relocation letter to Wahnee and that Wahnee was forced to retire, but Plaintiff provides no evidence in support of this allegation. In any event, the relocation of Wahnee's position and Wahnee's subsequent retirement are not relevant to Plaintiff's claims that the relocation of his own position was discriminatory or retaliatory.

discrimination based on age and reprisal. On January 12, 2004, Plaintiff was notified that the proposed relocation would be held in abeyance and, in fact, the proposed relocation never took place.[11]

**LEGAL STANDARD**

Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; Worrell v. Henry, 219 F.3d 1197, 1204 (10th Cir. 2000). The burden of showing an absence of a genuine issue of material fact falls upon the moving party. See Adler v Wal-Mart Store, Inc., 144 F.3d 664, 670 (10th Cir. 1998). However, when the moving party does not bear the ultimate burden of persuasion at trial, it may satisfy its burden at the summary judgment stage by pointing out to the Court that there is an absence of evidence to support the nonmoving party's case. Celotex Corp. v Catrett, 477 U.S. 317, 322-23 (1986); Adler, 144 F.3d at 671. The nonmoving party must then go beyond the pleadings to set forth specific facts showing that there is a genuine issue for trial sufficient to support a verdict for the nonmovant. Anderson v Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986). In ruling on a motion for summary judgment, a Court does not weigh the evidence, but determines whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law. Sierra Club v. El Paso Gold Mines, Inc., 421 F.3d 1133, 1150 (10th Cir. 2005). In making this determination, the Court must construe all the facts in the record and reasonable inferences that

---

[11]Not relevant to the remaining claims is the fact that Plaintiff was given a Notice of Proposed Removal on January 12, 2004, and Plaintiff was removed from federal service.

can be drawn from those facts in a light most favorable to the nonmoving party. Worrell, 219 F.3d at 1204.

**DISCUSSION**

I.  DISCRIMINATION

One of Plaintiff's remaining claims is based on his allegation that the relocation of his position was discrimination on the basis of age in violation of the ADEA. In his response to the motion for summary judgment, Plaintiff does not oppose the dismissal of his age discrimination claim. See Doc. 98. Accordingly, summary judgment will be entered in favor of Defendant on Plaintiff's claims of discrimination under the ADEA.

II.  RETALIATION

The anti-retaliation provisions of Title VII, the ADEA, and the ADA are virtually identical, Twisdale v. Snow, 325 F.3d 950, 952 (7th Cir. 2003), and claims under the Rehabilitation Act are analyzed using the same rubric as used for claims under the ADA, see 29 U.S.C. § 791(g) (incorporating ADA retaliation provision found at 42 U.S.C. § 12203). To establish a prima facie case of retaliation under the ADEA, Title VII, or the Rehabilitation Act, Plaintiff must show (1) he engaged in protected activity; (2) he suffered an adverse action "either after or contemporaneous with" his protected activity; and (3) "a causal connection between" his protected activity and the adverse action. Doebele v. Sprint/ United Mgmt. Co., 342 F.3d 1117, 1135 (10th Cir. 2003) (ADA case); Mattioda v. White, 323 F.3d 1288, 1293 (10th Cir. 2003) (Title VII case); Corneveaux v. CUNA Mut. Ins. Group, 76 F.3d 1498, 1507 (10th Cir. 1996) (ADEA case).

Defendant contends that Plaintiff fails to make a prima facie case of retaliation because he fails to offer evidence of protected activity and fails to show that he suffered any adverse employment action. Plaintiff correctly points out that the "adverse action" that supports a retaliation claim, at least under Title VII, is not limited to the "adverse employment actions" that are actionable under the substantive provisions of Title VII. Burlington Northern and Santa Fe Ry. Co. v. White, 126 S.Ct. 2405, 1414-15 (2006). However, the Court need not reach the issue whether Parisian's aborted attempt to relocate Plaintiff's position from New Mexico to Washington, D.C. was "materially adverse" as defined in White because I conclude that Plaintiff has failed to show that he engaged in protected activity or show any causal connection between the alleged protected activity and the alleged adverse action.

Plaintiff provides no evidence that he opposed discrimination by testifying, assisting or participating in any investigation, proceeding or hearing related to discrimination. Plaintiff's counsel argues that Plaintiff assisted Wahnee in making an EEO Complaint of discrimination by confirming that Parisian was aware of Wahnee's disability and continuing need for accommodation. However, Plaintiff provides no evidence that he provided such confirmation.[12]

Even if Plaintiff had shown protected activity, he has not established any causal connection between the protected activity and the allegedly adverse action. Adverse action must occur subsequent to or contemporaneously with protected activity; obviously, an adverse action that occurs before protected activity is not caused by the protected activity. See Doebele, 342 F.3d at 1135. Here, Plaintiff received his relocation letter on August 13, 2003, and there is no evidence

---

[12]As an aside, it not clear that merely "confirming" a fact for another employee is any manner of assistance that would amount to protected activity under the anti-retaliation provisions of Title VII, the ADA, the Rehabilitation Act or the ADEA.

that Wahnee engaged in any protected activity for which Plaintiff could have provided assistance until September 10, 2003.  Thus, the evidence does not support any inference of a causal relationship between Plaintiff's alleged assistance to Wahnee's discrimination complaint and the attempted relocation of Plaintiff's position.  Accordingly, Defendant is entitled to summary judgment on Plaintiff's claims of retaliation based on the attempted relocation of his job from Albuquerque, New Mexico to Washington, D.C.

**CONCLUSION**

　　　　IT IS THEREFORE ORDERED that Defendant's Motion for Summary Judgment (Doc. 82) is hereby GRANTED and Plaintiff's remaining claims are hereby DISMISSED WITH PREJUDICE.

_____
UNITED STATES DISTRICT JUDGE